# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| REDINA HAYSLETT, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )  No. 1:22-cv-1123-STA-jay |
| | ) |
| TYSON FOODS, INC., and its wholly | ) |
| Owned subsidiary, THE HILLSHIRE | ) |
| BRANDS COMPANY, | ) |
| | ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

For over twenty-five years, Plaintiff Redina Hayslett worked for a series of different employers at a pork processing plant in Newbern, Tennessee. The plant is currently owned and operated by Defendants Tyson Foods, Inc. and The Hillshire Brands Company. On November 1, 2021, Defendants placed Plaintiff on unpaid leave because Plaintiff had not complied with a company policy requiring employees to receive a COVID-19 vaccine and furnish proof of vaccination. Plaintiff alleges that Defendants have terminated or constructively terminated her employment in violation of Tennessee's recently enacted law protecting employees who object to taking a COVID-19 vaccine. Defendants now seek the dismissal of Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 11). The parties have fully briefed the issues, and the Motion is now ripe for determination. For the reasons set forth below, the Motion to Dismiss is **DENIED**.

1

**BACKGROUND**

Plaintiff filed an initial Complaint (ECF No. 1) on June 9, 2022.[1] For purposes of deciding Defendants' Rule 12(b)(6) Motion, the Court accepts as true the following well-pleaded facts from the Complaint. Plaintiff had worked on a production line in Defendants' Newbern pork processing plant since 1996. (Compl. ¶ 7.) Other than taking a few days off as she recovered from surgery in 2019, Plaintiff had a perfect attendance record over nearly 26 years of service. (*Id.* ¶ 9.) On August 3, 2021, Defendants announced to all employees that as a condition of continued employment and in the absence of documented and approved reasonable accommodations for disability or sincerely held religious beliefs, practices, or observances, all U.S.-based Tyson employees would be required to be vaccinated against COVID-19 and to provide proof of vaccination. (*Id.* ¶ 10.) Employees, including Plaintiff, had to submit proof of vaccination no later than November 1, 2021. (*Id.* ¶ 11.)

When Plaintiff requested a religious accommodation, Defendants offered her up to one year of absence without pay that would commence November 1, 2021. (*Id.* ¶ 15.) Defendants explained to Plaintiff that her other options were taking the vaccine or termination. (*Id.* ¶ 16.) After Defendants refused Plaintiff's request for an alternative accommodation (*Id.* ¶ 17), Plaintiff elected to take the unpaid leave of absence, effective November 1, 2021. (*Id.* ¶ 18.) In May 2022, Plaintiff notified Defendants she no longer wanted to remain on unpaid leave and

---

[1] On October 3, 2022, Plaintiff filed notice with the Court that she was pursuing administrative relief on a possible Title VII claim for religious discrimination. Notice, Oct. 3, 2022 (ECF No. 16). Plaintiff stated her intent to file an amended complaint upon receipt of a right-to-sue letter from the Equal Employment Opportunity Commission. The Court notes Plaintiff's recent filing for the record, though it does not bear on the Court's analysis of the Motion to Dismiss her initial pleading.

requested a return to work. (*Id.* ¶ 20.) Defendants refused her request to come back without first receiving the vaccine. (*Id.* ¶ 21.)

Based on these factual premises, the Complaint alleges that Defendants have terminated or constructively terminated Plaintiff's employment in violation of Tenn. Code Ann. § 14–2–102(a), Tennessee's statutory protection for individuals who harbor an objection to taking a COVID-19 vaccine. In their Motion to Dismiss, Defendants argue that Plaintiff has failed to state a claim under Tennessee law. Title 14 of the Tennessee Code Annotated took effect on November 12, 2021. Defendants placed Plaintiff on administrative leave on November 1, 2021, before the Tennessee's law effective date. As a result, Plaintiff cannot state a claim based on her unpaid administrative leave. Plaintiff responds that her unpaid administrative leave is an ongoing act of discrimination. While the act may have begun before Title 14's effective date, Defendants' discrimination continued beyond that date. Plaintiff argues then that she has a plausible claim for relief under Title 14. In their reply, Defendants counter that their decision to place Plaintiff on unpaid administrative leave is a discrete act of the sort that would typically trigger a cause of action under anti-discrimination law. Plaintiff cannot create a fresh claim of discrimination based on a discrete act that occurred before the Tennessee law took effect.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as

true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In this case the Court has subject-matter jurisdiction by virtue of the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). As in any case where the Court has jurisdiction based on the parties' diversity of citizenship and Tennessee law applies, the Court has as its task to anticipate or predict how the Tennessee Supreme Court would decide the

issues based on all of the available data. *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (citing *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012)). This includes the published opinions of the Tennessee Court of Appeals. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 358 (6th Cir. 2018) (citing Tenn. Sup. Ct. R. 4(G)(2) for the proposition that a published opinion of the Tennessee Court of Appeals is "controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction").

## ANALYSIS

The issue presented is whether Plaintiff has stated a plausible claim for relief under Tennessee statutory law based on Plaintiff's refusal to take the COVID-19 vaccine. The Tennessee General Assembly enacted Title 14 of the Tennessee Code Annotated, effective November 12, 2021, to create a number of protections related to COVID-19. Tenn. Code Ann. § 14–1–103 ("The purpose of this title is to safeguard the constitutional rights and liberty interests of persons during the COVID-19 pandemic."). Plaintiff alleges her claim under Tenn. Code Ann. § 14–2–102(a), the Title 14 provision addressed to COVID-19 vaccination status. That section prohibits a "private business, governmental entity, school, or local education agency" from "compel[ling] or otherwise tak[ing] an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID-19 vaccine for any reason." § 14–2–102(a). Tenn. Code Ann. § 14–2–102(a) requires a person injured under the section to prove the following elements: (1) that a "private business" or other covered entity (2) compelled the person to provide "proof of vaccination" or, in the alternative, took an "adverse action" against the person to compel the person to provide "proof of vaccination" (3) over the person's objection to receiving a COVID-19 vaccine for any reason. *Sadler v. Tyson Foods, Inc.*,

5

No. 1:22-cv-2203, 2022 WL 1721058, at *4 (W.D. Tenn. May 27, 2022); *see also* Edward G. Phillips & Brandon L. Morrow, *Not-So-Conscientious Objections: Tennessee's New Law to Combat Vaccine Mandates*, 58 Tenn. Bar J. 44, 45 (Feb. 2022) ("Speaking of objections, on what grounds can employees object to the vaccine? The answer: on any ground they want."). Title 14 grants a person injured as a result of such a violation a private right of action to seek "injunctive relief and to recover compensatory damages and reasonable attorneys' fees against an alleged violator." § 14–6–103.

Defendants do not specifically contest the Complaint's failure to allege any of the elements of a Title 14 claim. The question in this case is whether the Complaint has plausibly alleged that Defendants took "adverse action" against Plaintiff *after* the law had taken effect. Defendants argue that Plaintiff cannot obtain relief based on her unpaid leave, which began November 1, 2021, eleven days before Title 14 became the law in Tennessee. Plaintiff argues that her unpaid leave is akin to a continuing violation, which, though it began prior to Title 14's effective date, continued after the law went into effect.

The Court holds that the Complaint has plausibly alleged a violation of Tennessee law, though for reasons slightly different than those argued by the parties. Defendants frame Plaintiff's unpaid leave as the adverse action supporting her claim under Tenn. Code Ann. § 14–2–102(a). The Complaint, however, repeatedly alleges that Defendants terminated or constructively terminated Plaintiff's employment. Compl. ¶¶ 1, 22, 29, 33. The factual allegations of the Complaint show that Defendants gave Plaintiff the choice of termination or up to one year of unpaid leave and that Plaintiff initially elected to take leave, beginning November 1, 2021. *Id.* ¶¶ 15, 18. Defendants' policy provided for unpaid leave only through October 31, 2022. Plaintiff remained on unpaid leave from November 2021 to May 2022. The Complaint

6

goes on to allege that Plaintiff specifically requested permission to return to work in May 2022. *Id.* ¶ 20. Defendants denied her requests, telling Plaintiff she could not return until she was vaccinated and that she would "continue to be locked out of the facility." *Id.* ¶ 21. The Complaint alleges that Defendants have therefore terminated or constructively terminated Plaintiff's employment.

The Court holds that the Complaint plausibly alleges that Defendants have terminated Plaintiff's employment.[2] Although the Complaint never gives an exact date of Plaintiff's termination, the Complaint alleges that Defendants' policy for unvaccinated employees was essentially get the vaccine or do not come back to work. Plaintiff never received the vaccine and after several months of unpaid leave asked to forego continued leave and return to work, a request Defendants denied. These allegations reasonably imply that Plaintiff's employment has come to an end. Accepting the allegations of the Complaint as true and giving Plaintiff the benefit of all the reasonable inferences to be drawn from those allegations, the Complaint states a claim under Tenn. Code Ann. § 14–2–102(a) based on Plaintiff's termination.

---

[2] What is less clear is whether the Complaint has plausibly alleged constructive discharge, at least under general principles of federal anti-discrimination law. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Penn. St. Police v. Suders*, 542 U.S. 129, 141 (2004)). As one of the basic elements of a constructive discharge claim, a plaintiff must allege and prove that she actually resigned her job. *Id.*; *see also Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022) ("A constructive discharge does not occur until the employee resigns."). In this case the Complaint never specifically states that Plaintiff has resigned or was compelled to resign her job. The parties have not squarely addressed this question at the pleadings stage. Because the Complaint can be read to allege that Plaintiff was actually terminated, the Court need not address whether Plaintiff has alleged the elements of a constructive discharge claim.

Defendants' Motion to Dismiss focuses on Plaintiff's unpaid leave as the adverse action on which her Title 14 claim rests. For the reasons the Court has just explained, Defendants' argument does not require the dismissal of Plaintiff's claim. The Complaint alleges that Plaintiff's unpaid leave began in November 2022 but that Defendants have since terminated Plaintiff's employment. In the alternative, even if the Complaint could be read to allege her unpaid leave as the only adverse action Plaintiff has suffered, that would suffice to state a claim pursuant to Tenn. Code Ann. § 14–2–102(a). Title 14 defines an "adverse action" as to "[d]ischarge, threaten, or otherwise discriminate against an employee in any manner that affects the employee's employment, including compensation, terms, conditions, locations, rights, immunities, promotions, or privileges." Tenn. Code Ann. § 14–1–101(2)(B). Defendants' decision to put Plaintiff on unpaid leave for up to a year easily satisfies the statute's expansive definition of an "adverse action."

This still leaves the issue of whether Title 14 reaches employment-related conduct that began 11 days before the effective date of the law. Defendants' argument, that their policy could not violate the law because Plaintiff's unpaid leave took effect before the law did, is not convincing. Defendants make two principal points in support of their position. First, Defendants contend that Tennessee does not apply new statutes retroactively. Under Tennessee law, "[s]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." *Nutt v. Champion Intern. Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) (citing *Shell v. State*, 893 S.W.2d 416, 419 (Tenn. 1995)); *see also* Tenn. Const. art. 1, § 20 ("That no retrospective law, or law impairing the obligations of contracts, shall be made."). Defendants argue that the rule announced in *Nutt* supports their position.

8

The issue presented in *Nutt* was "whether an employer is entitled to an offset of long-term disability payments against a workers' compensation award for permanent total disability." *Nutt*, 980 S.W.2d at 366. In an earlier case, the Tennessee Supreme Court had held that an employer was not entitled to an offset under Tenn. Code Ann. § 50–6–114(a). *Id.* at 367–68 (citing *McCaleb v. Saturn Corp.,* 910 S.W.2d 412 (Tenn. 1995)). The Tennessee General Assembly, "in response to" *McCaleb*, enacted Tenn. Code Ann. § 50–6–114(b), which expressly entitled employers to an offset. *Id.* The plaintiff in *Nutt* was injured after the *McCaleb* decision but before the effective date of Tenn. Code Ann. § 50–6–114(b). The Tennessee Supreme Court held that the subsequently enacted statute did not apply retroactively, and so the employer in *Nutt* was not entitled to Tenn. Code Ann. § 50–6–114(b)'s offset.

Defendants' retroactivity point is true, as far as it goes. Generally speaking, Tennessee statutes do not apply retroactively, subject to narrowly defined exceptions. *Nutt*, 980 S.W.2d at 368 ("An exception to the prospective-only application exists for statutes which are remedial or procedural in nature."). The critical distinction between *Nutt* and Plaintiff's case is the fact that *Nutt* addressed an amendment to an existing law, specifically the remedies available to an employer under Tennessee worker's compensation law. Plaintiff's case against Defendants is not that an amendment to an existing law should apply retroactively to an injury happening before the effective date of the amendment. Rather Plaintiff seeks to hold Defendants liable for violations of an entirely new legislative enactment applied prospectively to address ongoing conduct prohibited by the newly enacted law. *See Bazemore v. Friday*, 478 U.S. 385, 395 (1986) ("A pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, it is liable under that

statute."). The fact is Title 14 protects Plaintiff and other similarly situated persons from certain types of adverse actions like unpaid leave, and the Tennessee General Assembly has stated its intention that courts construe Title 14 "broadly" to effectuate its purposes. Tenn. Code Ann. § 14–1–103. To accept Defendants' position would not just narrow Title 14's application but "would have the effect of exempting from liability" any employer who decided to take an adverse action against an employee (and just days before Title 14 took effect) and then adhered to its decision even though the employer was violating the new law. *Bazemore*, 478 U.S. at 395. The Court finds Defendants' retroactivity argument to be unpersuasive.

Defendants' second point is somewhat related to its first, namely, that any claim Plaintiff may have had based on her unpaid leave constitutes a discrete employment action and therefore accrued prior to the effective date of Title 14. So in Defendants' view, any cause of action available to Plaintiff based on her unpaid leave would have accrued no later than November 1, 2021. Because Title 14 had not yet taken effect as of that date, Plaintiff cannot now hold Defendants liable for a violation of the law. Defendants go so far as to state in their reply brief that "the vaccination policy at issue was and is lawful in Tennessee," an unusual claim in light of the clear language and intent of Title 14. Defs.' Reply 2 (ECF No. 15).

At any rate, Defendants' accrual argument is not squarely on point. "The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Story v. Bunstine*, 538 S.W.3d 455, 463 (Tenn. 2017) (quoting *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012)). Defendants are not raising a statute of limitations defense, just arguing that Plaintiff's Title 14 claim based on her unpaid leave accrued prior to the effective date of Title 14. Defendants have not shown why their accrual argument actually

10

answers the question the Court must decide about whether Plaintiff has a viable Title 14 claim based on unpaid leave.

Moreover, Defendants' point actually turns the accrual analysis on its head. Under Tennessee's "traditional accrual rule,"[3] "a cause of action accrues and the applicable statute of limitations begins to run when the plaintiff has a cause of action and the right to sue." *Redwing*, 363 S.W.3d at 457; *see also Green v. Brennan*, 578 U.S. 547, 554 (2016) (explaining that under Title VII, a discrimination claim accrues and the "limitations period commences when the plaintiff has a complete and present cause of action," meaning "the plaintiff can file suit and obtain relief"). Under Tennessee's traditional accrual rule, Plaintiff's Title 14 claim could not have accrued on November 1, 2021. Plaintiff did not have "a cause of action and the right to sue" on that date. *Redwing*, 363 S.W.3d at 457. Plaintiff could only "file suit and obtain relief" after the effective date of the law, November 12, 2021. *Green*, 578 U.S. at 554. Defendants' argument that the cause of action based on a statutory violation somehow accrued at a time before the statute's enactment and when Plaintiff could not have filed suit is unconvincing, particularly at the pleadings stage and where Defendants ask the Court to decide the question as a matter of law.

## **CONCLUSION**

The Court holds that the Complaint alleges a plausible violation of Tenn. Code Ann. § 14–2–102(a) based on Plaintiff's alleged termination. In the alternative, the Complaint plausibly

---

[3] Under Tennessee's discovery rule, "a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct." *Redwing*, 363 S.W.3d at 459 (quoting *Carvell v. Bottoms,* 900 S.W.2d 23, 29 (Tenn. 1995)) (cleaned up).

alleges that Plaintiff's ongoing unpaid leave violates Tennessee law. Therefore, Defendants' Motion to Dismiss is **DENIED**.

    **IT IS SO ORDERED**.

                                      **s/ S. Thomas Anderson**
                                      S. THOMAS ANDERSON
                                      CHIEF UNITED STATES DISTRICT JUDGE

                                      Date:  October 20, 2022.