IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **REDINA HAYSLETT,** | |
| **Plaintiff,** | |
| v. | **CIVIL ACTION NO. 1:22-CV-01123-STA-jay** |
| **TYSON FOODS, INC., and its wholly owned subsidiary, THE HILLSHIRE BRANDS COMPANY,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

___

Defendants Tyson Foods, Inc. ("Tyson") and The Hillshire Brands Company (collectively referred to as "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and L.R. 56.1, hereby file this Memorandum in Support of Defendants' Motion for Summary Judgment and state the following:

**I.      INTRODUCTION**

This lawsuit arose out of a COVID-19 vaccination policy that Tyson Foods, Inc. announced on August 3, 2021, which became effective for plant-based employees, like Plaintiff, on November 1, 2021. Defendants terminated the employment of employees who failed to provide proof of vaccination by November 1, 2021, unless they had requested, and Defendants had approved, their request for a medical or religious accommodation. Defendants offered employees who had requested and had been approved for a medical and/or a religious accommodation, a leave of absence with health benefits for up to one-year, referred to as "LOA Plus," which began on November 1, 2021.

1

At the time Defendants announced the policy, Defendants employed Plaintiff as a Packer/Scrapper at their Newbern, Tennessee facility. As a Packer/Scrapper, Plaintiff's duties entailed working on a production line within the Newbern facility. The Packer/Scrapper position cannot be performed remotely. Plaintiff subsequently asked Defendants to allow her to remain at work unvaccinated while continuing to observe the existing safety practices of mask wearing, social distancing, and submitting to weekly COVID tests at her expense. Defendants instead offered and Plaintiff accepted the religious accommodation of LOA Plus. Plaintiff began her leave on November 1, 2021. Defendants never asked Plaintiff to provide proof of vaccination. Defendants denied Plaintiff's request to return to work in May and June 2022 because she was unvaccinated. In October 2022, Defendants ended the vaccination policy and sent Plaintiff an offer to return to work unvaccinated, which Plaintiff accepted.

## II.     MATERIAL FACTS NOT IN DISPUTE[1]

1. Plaintiff worked for Defendants as a Packer Scrapper at the Hillshire Brands' facility in Newbern, Tennessee. (CSMF, at ¶1). Plaintiff was awarded the Packer Scrapper position in October 2021. (CSMF, at ¶2). On August 3, 2021, Defendants announced to all employees that as a condition of continuing employment and in the absence of documented and approved reasonable accommodations for a disability or sincerely held religious beliefs, practices, or observances, all Tyson employees in the United States would be required to be vaccinated against COVID-19 and to provide Tyson with proof of vaccination. (CSMF, at ¶3). The vaccine policy applied to all employees regardless of their religious beliefs or lack of religious beliefs. (CSMF, at ¶4). The deadline for Plaintiff and other Tyson employees to receive the COVID vaccination was November 1, 2021. (CSMF, at ¶5).

---

[1] Plaintiff's allegations set forth herein are undisputed for summary judgment purposes **only**.

Tyson implemented the vaccine policy to keep employees safe and healthy, to provide a safe, healthy work environment, and to allow Tyson to continue operating to provide food for Americans. (CSMF, at ¶6). Defendants began considering implementing a COVID vaccine policy when the vaccine became available in the United States in the beginning of 2021. (CSMF, at ¶7). Defendants relied on CDC guidance recommending vaccinations as the best way to protect employees from the virus and the effects of the virus, like hospitalizations and death. (CSMF, at ¶8). Defendants had a comprehensive, detailed system for tracking employee COVID-19 cases to monitor the number of team members who were COVID-positive or who were close contacts with individuals who were positive, and Defendants closely watched the deaths and hospitalization rates, and paid close attention to regular updates from the CDC guidance on how to prevent COVID. (CSMF, at ¶9). Defendants' Chief Medical Officer regularly reviewed external data concerning the COVID pandemic that was independent of the CDC's information and reported what was medically advisable to them. (CSMF, at ¶10).

In a July 30, 2021, CDC online publication "Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage" discussed, among other things, the effectiveness of vaccines and the protection they offer against the Delta variant:

> COVID-19 vaccination remains the most effective means to achieve control of the pandemic. In the United States, COVID-19 cases and deaths have markedly declined since their peak in early January 2021, due in part to increased vaccination coverage (*1*). However, during June 19–July 23, 2021, COVID-19 cases increased approximately 300% nationally, followed by increases in hospitalizations and deaths, driven by the highly transmissible B.1.617.2 (Delta) variant* of SARS-CoV-2, the virus that causes COVID-19. Available data indicate that the vaccines authorized in the United States (Pfizer-BioNTech, Moderna, and Janssen [Johnson & Johnson]) offer high levels of protection against severe illness and death from infection with the Delta variant and other currently circulating variants of the virus (*2*). Despite widespread availability, vaccine uptake has slowed nationally with wide variation in coverage by state (range = 33.9%–67.2%) and by county (range = 8.8%–89.0%).† Unvaccinated persons, as well as persons with certain immunocompromising

conditions (*3*), remain at substantial risk for infection, severe illness, and death, especially in areas where the level of SARS-CoV-2 community transmission is high. The Delta variant is more than two times as transmissible as the original strains circulating at the start of the pandemic and is causing large, rapid increases in infections, which could compromise the capacity of some local and regional health care systems to provide medical care for the communities they serve. Until vaccination coverage is high and community transmission is low, public health practitioners, as well as schools, businesses, and institutions (organizations) need to regularly assess the need for prevention strategies to avoid stressing health care capacity and imperiling adequate care for both COVID-19 and other non–COVID-19 conditions.

https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2.htm (CSMF, at ¶11).

When the Delta variant appeared and caused more deaths, Defendants implemented the vaccination policy. (CSMF, at ¶12). In August 2021 when Defendants announced the vaccine policy, employees already had been wearing masks, washing their hands, social distancing at work, and getting tested at work when they had symptoms or felt ill, but despite the foregoing precautions, Plaintiff admits "so many" of her coworkers caught COVID (CSMF, at ¶13). Tyson implemented its vaccine policy because the Delta variant was just emerging, and it was more deadly and more contagious than any other previous variant. (CSMF, at ¶14). Plaintiff spoke with Defendants' Newbern plant Sr. HR Manager Ronda Gooch about a religious accommodation from the COVID vaccine policy. (CSMF, at ¶15). Plaintiff testified that her religious beliefs conflicted with Defendants' requirement that all employees received the COVID vaccine. (CSMF, at ¶16).

Plaintiff submitted to Ms. Gooch a completed religious accommodation request form that Ms. Gooch had provided her along with some additional information. (CSMF, at ¶17). No one at Tyson said anything derogatory to Plaintiff, who is Baptist, about her religious beliefs during this time. (CSMF, at ¶18). Defendants granted Plaintiff's request for a religious accommodation. (CSMF, at ¶19). Defendants offered a Leave of Absence Plus, which began on November 1, 2021, as an accommodation to those employees who had sincerely held religious beliefs, practices, or observances and or who sought a medical accommodation. (CSMF, at ¶20). After Ms. Gooch

4

offered Plaintiff the Leave of Absence Plus accommodation, Plaintiff said that she would need to think about it, and she ultimately accepted the offer on October 27, 2022. (CSMF, at ¶21).

Despite the distancing, masking, and testing that Defendants had been doing, the COVID rate and the community COVID rate were still high; therefore, the only accommodation that was allowed was the Leave of Absence Plus. (CSMF, at ¶22). On October 25, 2021, Plaintiff spoke with Ms. Gooch a second time and handed her a letter asking that Defendants permit her to remain at work unvaccinated and continue with the same pre-policy measures rather than being placed on a leave of absence. (CSMF, at ¶23). Allowing Plaintiff to remain at work unvaccinated even with masking, social distancing, and frequent testing would create health and safety risks because Plaintiff had to work in close proximity to other employees beyond her own work area. (CSMF, at ¶24). For example, Plaintiff had to do handwashing at the handwash sink where other team members would stand beside her, she had to come into a temperature taking station where other team members were in the same line, and she would have to be relieved for lunch. (CSMF, at ¶25). Approximately seven hundred employees work at Defendants' Newbern plant. (CSMF, at ¶26). Plaintiff worked on an assembly line with two other employees, and a floor person would come to the line and empty the tub that Plaintiff filled. (CSMF, at ¶27).

Plaintiff was not forced to receive the COVID vaccine because of the accommodation she received. (CSMF, at ¶28). On November 1, 2021, Defendants placed Plaintiff on a leave of absence, during which she remained an employee and retained her company health insurance. (CSMF, at ¶29). Defendants terminated all employees who refused to be vaccinated by the deadline who had not been granted a religious or medical accommodation. (CSMF, at ¶30). After November 1, 2021, all of Defendants' employees who were at work had received COVID vaccinations. (CSMF, at ¶31). Defendants did not discipline Plaintiff for not receiving the COVID vaccine. (CSMF, at

¶32).  No employee of Defendants asked Plaintiff to provide proof of vaccination. (CSMF, at ¶33). After Defendants implemented the vaccine mandate, employee hospitalizations and deaths were reduced dramatically and the number of employee COVID cases went down as well. (CSMF, at ¶34).

In May 2022, Plaintiff contacted Ms. Gooch three times and asked if she could return to work.  Ms. Gooch told her no because Plaintiff had not received the COVID vaccine. (CSMF, at ¶35).  On June 2, 2022, Plaintiff sent Ms. Gooch an email asking to be reinstated to her previous position. (CSMF, at ¶36).   On October 27, 2022, Defendants sent Plaintiff a letter with an offer to return her to work unvaccinated. (CSMF, at ¶37).  Plaintiff accepted the Defendants' unconditional offer to return to work. (CSMF, at ¶38).

### III.     STANDARD OF REVIEW

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002). While all facts and inferences must be viewed in the light most favorable to Plaintiff as the non-moving party, she must offer "concrete evidence from which a reasonable juror could return a verdict in his favor" to overcome Defendants' Motion for Summary Judgment. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 256 (1986).

To withstand summary judgment, Plaintiff must "go beyond the pleadings and come forward with specific facts to demonstrate that there is no genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ*., 351 F.3d 240, 253 (6th Cir. 2003) (quotation and citations omitted); *see also Arendale v. City of Memphis*, 519

F.3d 587, 601 (6th Cir. 2008) ("[C]onclusory statements are not sufficient to survive *any* motion for summary judgment."); *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) ("[E]vidence cannot be based on rumors, conclusory allegations, or subjective beliefs."). To survive summary judgment, Plaintiff must present affirmative evidence supporting his claim. *Bell*, 351 F.3d at 247. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## IV.     LEGAL ARGUMENT

### A.     Plaintiff's Religious Discrimination Claim Under Title VII Should Be Dismissed Since Defendants Did Not Discriminate Against Plaintiff on the Basis of Her Religion.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e–2(a). The term "religion" includes all aspects of religious observance and practice, "unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The Sixth Circuit recognizes two forms of religious discrimination: (1) claims alleging failure to accommodate a religious belief or practice, and (2) claims alleging disparate treatment. Plaintiff alleges Defendants discriminated against her both ways. Her claims fail, however, because she has not presented any facts or evidence to set forth a *prima facie* case of religious discrimination under either category.

#### 1.     Plaintiff Cannot Establish A Failure to Accommodate Claim

To set forth a *prima facie* case of discrimination for failure to reasonably accommodate a religious belief or practice under Title VII, Plaintiff must show that she: 1) holds a sincere religious belief that conflicts with an employment requirement; 2) informed her employer about the conflict;

and 3) was discharged or disciplined for failing to comply with the conflicting employment requirement. *Virts v. Consol. Freightways Corp. of Delaware,* 285 F.3d 508, 516 (6th Cir. 2002) (citing *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir.1987). If Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to show that they could not reasonably accommodate her without undue hardship. *Virts*, 285 F.3d at 517; *see also Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir.1994) (*prima facie* case of religious discrimination requires discharge or discipline for failure to comply with an employment requirement.). Here, Plaintiff cannot establish a *prima facie* case. Moreover, even assuming Plaintiff can establish a *prima facie* case, Defendants could not reasonably accommodate her without undue hardship.

### a.     Plaintiff cannot establish a *prima facie* case

For purposes of this motion only, Defendants do not dispute that Plaintiff had a sincerely held religious belief. She cannot show, however, that Defendants disciplined or discharged her for not receiving the COVID vaccine. Title VII directs that "any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia Bd. of Educ.*, 479 U.S. at 68-69 (relying on 42 U.S.C. § 2000e(j)). Here, Plaintiff informed Defendants that she had a religious conflict with the vaccination policy and submitted a written request for accommodation. In response, Defendants offered her a leave of absence with health benefits (where she remained an employee) and was not required to receive the COVID vaccination. Defendants continued Plaintiff's employment and maintained her health insurance. Defendants' offer of LOA Plus effectively resolved Plaintiff's religious conflict with the vaccine policy. Thus, Defendants reasonably accommodated Plaintiff's religious conflict. *See Tepper v. Potter*, 505 F.3d 508, 512-14 (6th Cir. 2007) (Court found, *inter alia*, that Supervisor's directive to plaintiff to use unpaid leave to resolve religious conflict in order to observe Saturday Sabbath was not disciplinary action,

8

in affirming dismissal of failure to accommodate claim.); *Reed v. International Union, United Automobile Aerospace, and Agricultural Implement Workers of America*, 569 F. 3d 576, 581 (6th Cir. 2009) (Sixth Circuit, in dismissing Title VII religious discrimination claim, also noted that plaintiff in *Tepper* claimed that unpaid leave was not reasonable accommodation which the Court rejected).

Indeed, courts across the country routinely hold that placing an employee on unpaid leave is a reasonable accommodation under Title VII. *Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Counties*, 735 F.2d 388, 391 (10th Cir. 1984) ("Defendant's [leave] policy, although it may require teachers to take occasional unpaid leave, is not an unreasonable accommodation of teachers' religious practices."); *Anderson v. United Airlines, Inc.*, No. 3:21-CV-1050-TJC-LLL, 2021 WL 6337144, at *5 (M.D. Fla. Dec. 30, 2021) (finding Plaintiff failed to show he was "substantially likely to succeed on his Title VII claim" based on his allegation that unpaid leave was not a reasonable accommodation); *Horvath v. City of Leaner*, No. 1:17-CV-256-RP, 2018 WL 10771965, at *5 (W.D. Tex. 2018), aff'd 946 F.3d 787 (5th Cir. 2020) (that an accommodation "would have resulted in a loss in income[,] does not make [the employer's] proposed accommodation unreasonable"). Here, Defendants met their obligation to reasonably accommodate Plaintiff's religious belief by offering her LOA Plus. *See Ansonia Board of Educ.*, 479 U.S. at 69 ("We accordingly hold that an employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee."). Consequently, Defendants did not discipline or discharge Plaintiff for not receiving the vaccine.

That the leave was unpaid does not change this conclusion. *See Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) ("[M]ore than loss of pay is required to demonstrate discipline or discharge. The Supreme Court has stated that 'the direct effect of unpaid leave is merely a loss of income for

the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status." (quoting *Ansonia Bd. of Educ.*, 479 U.S. at 70–71)); *Goldmeier v. Allstate Ins. Co.,* 337 F.3d 629, 637 (6th Cir. 2003) (affirming summary judgment and declining to remove discharge or discipline requirement from *prima facie* case, citing *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68 (1986) (explicitly declining to rule on the existence of a *prima facie* case where employee was not discharged).

> b. **Assuming for Sake of Argument That LOA Plus was discipline or discharge, Plaintiff's Proposed Accommodation Would Have Imposed An Undue Hardship On Defendants' Business Operations.**

Even assuming that Plaintiff established a *prima facie* case (she did not), allowing Plaintiff to continue working unvaccinated would have created an undue hardship on Defendants' business operations as a result of prevalent safety concerns. "'[U]ndue hardship' in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Groff*, 2023 WL 4239256 at *11.

Here, Defendant operates a meat processing facility with 700 employees and Plaintiff's job required her to be physically present on the production line to perform her duties at Defendants' facility working in close proximity to other employees beyond her own work area. (CSMF, at ¶¶ 24-27). Masking, social distancing, and testing symptomatic or ill employees had not eradicated the contagion rate in the facility. (CSMF, at ¶¶ 13, 22). Thus, it created a safety risk for Plaintiff to remain in the workplace in an unvaccinated state. When Defendants implemented the vaccine policy, and began making accommodation decisions, the Delta variant was just emerging, and it was more deadly and contagious than any other previous variant. (CSMF, at ¶ 14). At the time Plaintiff requested a religious accommodation of masking, social distancing, and getting tested

weekly for COVID at work; masking, social distancing, temperature screening, and testing symptomatic employees were already in place yet, as Plaintiff testified, many employees still got sick with COVID (CSMF, at ¶ 13). Despite the distancing, masking, temperature checks, and testing symptomatic employees that Defendants had been doing, the COVID rate and the community COVID rate were still high. (CSMF, at ¶ 22). Consequently, the only accommodation Defendants gave employees at the Newbern facility was the Leave of Absence Plus. (CSMF, at ¶ 20).

The Sixth Circuit has held that a proposed accommodation that would potentially have an adverse impact on other employees "clearly shows" that the employer would suffer an undue hardship in attempting to make that accommodation. *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 520-21 (6th Cir. 2002) (affirming dismissal of plaintiff's Title VII religious discrimination claim); *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1976) ("[S]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on an employer's business."); *see also EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) ("A religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship."); *Mohamed-Sheik v. Golden Foods/Golden Brands LLC*, No. 303CV737H, 2006 WL 709573, at *4 (W.D. Ky. Mar. 16, 2006) ("Cases within the Sixth Circuit and other jurisdictions establish that an employer is not required to accommodate a religious concern when doing so would potentially create a safety risk to its employees or a legal risk for the employer.").

The EEOC agrees[2]. "Costs to be considered [in analyzing undue hardship] include … the burden on the conduct of the employer's business – including, in this instance, the risk of the spread of COVID-19 to other employees or to the public." *EEOC: What You Should Know About COVID-*

---

[2] "As *Groff* recognized, "[a] good deal of the EEOC's guidance in this area [undue hardship] is sensible and will, in all likelihood, be unaffected . . . ." *Groff*, 2023 WL 4239256 at *11."

*19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Section L.3. The EEOC has also stated that "[e]mployers may rely on CDC recommendations when deciding whether an effective accommodation is available that would not pose an undue hardship." *Id.* at L.5. Indeed, "[c]ourts have found Title VII undue hardship where, for example, the religious accommodation would impair workplace safety, diminish efficiency in other jobs, or cause coworkers to carry the accommodated employee's share of potentially hazardous or burdensome work." *Id.* The Court in *Groff* also recognized that "an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business, but a court cannot stop its analysis without examining whether that further logical step is shown in a particular case." 2023 WL 4239256 at *12.

Here, Plaintiff had to be physically present on the production line at Defendants' facility to perform her job duties. Thus, her job could not be done remotely. Further, Plaintiff's close proximity to other employees beyond her own work area as an unvaccinated employee remaining in the workplace created a safety risk which could result in illness, hospitalization, and even death for other employees, potential liability for Defendants, and illness-related absences which impact productivity and output. (CSMF, at ¶¶ 24-27). At the time Defendants implemented the vaccine policy, and accommodation decisions were made, the Delta variant was just emerging, and it was more deadly and contagious than any other previous variant. (CSMF, at ¶ 11, 14). In implementing its mandatory vaccination policy, Defendants, as permitted by the EEOC, relied on CDC guidance that vaccines were the single best way to protect employees from the COVID virus and the effects of the virus, like hospitalizations and death. (CSMF, at ¶¶ 8, 11). *See* "Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage" (July 30, 2021)[3] ("Unvaccinated persons, as well as persons with certain

---

[3] https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2.htm

immunocompromising conditions, remain at substantial risk for infection, severe illness, and death, especially in areas where the level of SARS-CoV-2 community transmission is high. The Delta variant is more than two times as transmissible as the original strains circulating at the start of the pandemic and is causing large, rapid increases in infections…."). Simply put, the negative impact to Defendants' operations, including the safety risks to its employees of unvaccinated co-workers is "substantial in the context of" the Defendants' business and constitutes undue hardship.

Consequently, Plaintiff's religious discrimination/failure to accommodate claim under Title VII should be dismissed since Plaintiff's proposed accommodations would have created an undue hardship on Defendants.

### 2. Defendants Did Not Subject Plaintiff to Disparate Treatment.

To set forth a *prima face* case of religious discrimination based on disparate treatment, Plaintiff must show: (1) she was a member of a protected class, (2) she experienced an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff's claim under a disparate treatment analysis fails because she cannot show that she suffered an adverse action, was replaced by someone outside her protected class, or was treated differently than similarly situated employees.

As established above, Defendants did not subject Plaintiff to any disciplinary or adverse employment actions, and they made her an offer to return to work unvaccinated once Defendant ended its vaccination policy in October 2022. (CSMF, at ¶¶ 32, 37). Additionally, Plaintiff testified that Defendants' vaccination policy applied to all of Defendants' team members regardless of their religious affiliation. (CSMF, at ¶ 4). Plaintiff also testified that no one said anything derogatory to

her about her religious beliefs during this time. (CSMF, at ¶ 18). Thus, Defendants did not treat Plaintiff differently than other Newbern team members, and her disparate treatment claim fails.

Further, even if Plaintiff could establish a *prima facie* case of discrimination, which she cannot, Defendant had legitimate, non-discriminatory reasons for its actions – namely, to mitigate the spread of COVID-19, and protect the community at large, including its own employees. *See, e.g.*, *Legaretta v. Macias*, 603 F. Supp. 3d 1050, 1062 (D.N.M. 2022) ("The Vaccine Directive was adopted to 'safeguard the health of [the County's] employees, their families, the customers [they] serve, and the community at large,' and follows guidance from NMDOH that 'the currently available COVID-19 vaccines are safe and the most effective way of preventing infection, serious illness, and death.' …[and] [t]hus intended to mitigate the risks from COVID-19 and grounded in public health guidelines…."). Plaintiff has not provided any evidence even remotely suggesting Defendants' reasons are false. Accordingly, Plaintiff's religious discrimination claim should be dismissed.

      **B.**      **Plaintiff Cannot Establish All of the Essential Elements of a Claim Under the Tenn. Code Ann. § 14-1-101 *et seq.* ("Tennessee COVID Law").**

As a threshold matter, Defendants' decision to implement a vaccination policy and place Plaintiff on LOA Plus occurred before the effective date of the Tennessee COVID Law. Plaintiff has conceded that under the authority of *Nutt v. Champion International Corporation*, 980 S.W.2d 365, 368 (Tenn. 1998), the Tennessee COVID Law, which became effective on November 12, 2021, operates only prospectively, and does not cover conduct before November 12, 2021. (D.E. 14, at pp. 3-4).

To establish *a prima facie* case for wrongful termination under the Tennessee COVID Law, Plaintiff must prove: (1) that a "private business" or other covered entity (2) compelled Plaintiff to provide "proof of vaccination" or, in the alternative, took an "adverse action" against Plaintiff to

14

compel her to provide "proof of vaccination" (3) over Plaintiff's objection to receiving a COVID-19 vaccine for any reason. *Sadler v. Tyson Foods, Inc.*, No. 1:22-cv-2203-STA-jay, 2022 WL 1721058, at *3 (W.D, Tenn. May 27, 2022) (granting Defendant's Motion to Dismiss as Plaintiff's claim did not meet the necessary elements under the TN COVID-19 Statute). Plaintiff cannot meet the second prong of her *prima facie* case because she has not sufficiently alleged and there is no proof that Defendants compelled her to provide "proof of vaccination" or that Defendants took adverse action against her to compel her to provide "proof of vaccination" following the enactment of the Tennessee COVID Law. Further, the plain language of the Tennessee COVID Law—and the legislative hearings surrounding it—clarify that a private Tennessee employer is authorized to institute a mandatory COVID-19 policy as long as the employer does not require "proof of vaccination."

1. **Plaintiff Does Not Allege And Has No Proof That Defendants Required Plaintiff To Provide Proof Of Vaccination Or That Defendants Took An Adverse Action Against Plaintiff To Compel Her To Provide Proof Of Vaccination Following Enactment of the Tennessee COVID Law.**

The Tennessee COVID Law became effective on November 12, 2021. Defendants' mandatory vaccination policy was announced on August 3, 2021, and all plant employees, such as Plaintiff, were required to be fully vaccinated by November 1, 2021, or face termination unless they requested and were granted a religious accommodation or medical exemption. (CSMF, at ¶¶ 3, 5, 20). Plaintiff requested and was granted a religious accommodation and was placed on LOA Plus beginning on November 1, 2021. CSMF, at ¶¶ 19-21). The undisputed evidence establishes that Defendants never required Plaintiff to show proof of vaccination, so her claim fails.

Under the Tennessee COVID Law, "proof of vaccination" is defined as "physical documentation or digital storage of a person's receipt of a COVID-19 vaccine." Tenn. Code Ann. § 14-1-101(17). Defendants did not require Plaintiff to provide any physical documentation or

15

digital storage of her COVID-19 Vaccine following the enactment of the Tennessee COVID Law (or at any other time). Defendants granted Plaintiff LOA Plus as a religious accommodation before the Tennessee COVID Law's effective date, and she remained an employee of Defendants during the leave and maintained her employee benefits. Since Plaintiff requested (and Defendants granted) a religious accommodation before November 1, 2021, the issue of proof of vaccination was never reached. Plaintiff testified that she contacted Ronda Gooch in May 2022 and June 2022 and asked if she could return to work. After Plaintiff advised Ms. Gooch that she had not received the COVID vaccination, Ms. Gooch told Plaintiff she could not because Defendants' vaccination policy was still in effect. (CSMF, at ¶¶ 35-36).  Plaintiff admits that no one asked her to provide a proof of vaccination (CSMF, at ¶ 33).

Since Plaintiff does not sufficiently allege and has offered no proof that Defendants required her to provide "proof of vaccination," or that Defendants took an adverse action against her to compel her to provide "proof of vaccination" following the enactment of the Tennessee COVID Law, she cannot establish a *prima facie* case and her wrongful termination claim should be dismissed. *Sadler v. Tyson Foods, Inc.*, No. 1:22-cv-2203-STA-jay, 2022 WL 1721058, at *3 (W.D, Tenn. May 27, 2022).

> 2. **The Tennessee COVID Law Unambiguously Shows That a Private Tennessee Employer Can Require Vaccination As Long As They Do Not Require "Proof of Vaccination."**

The plain language of the Tennessee COVID Law shows that private Tennessee employers, like Defendants, can institute a COVID-19 vaccination policy because only "[a] governmental entity, school, or local education agency shall not mandate that a [p]erson receive a COVID-19 vaccine." Tenn. Code Ann. § 14-2-101. A private employer is free to implement a mandatory vaccination policy as long as the employer does not require "proof of vaccination." *See* Tenn. Code

FP 47677009.1

Ann. § 14-2-102(a) . Here, the relevant statutory provision provides:

> (a) A private business, governmental entity, school, or local education agency shall not compel or otherwise take an adverse action against a person *to compel the person to provide proof of vaccination* if the person objects to receiving a COVID-19 vaccine for any reason.

*See* Tenn. Code Ann. § 14-2-102(a) (*emphasis added*).

When statutory language is "clear and unambiguous," courts must apply the plain language of the statute without adopting a forced interpretation that would restrict or broaden the statute's scope. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). When interpreting statutes or ordinances, courts are to follow the canon of construction *expressio unius est exclusio alterius*, "which holds that the expression of one thing implies the exclusion of others." *Rich v. Tenn. Bd. of Medical Examiners*, 350 S.W. 3d 919, 927 (Tenn. 2011). Since the statute included a complete ban on mandatory vaccinations for a "governmental entity, school, or local education agency" but did not include the same restriction for private businesses, it is clear that private businesses are permitted to institute mandatory vaccination policies under the Tennessee COVID Law. *Compare* Tenn. Code Ann. § 14-2-102(a) ("A private business, governmental entity, school, or local education agency shall not compel or otherwise take an adverse action against a person to compel the person to provide proof of vaccination…."), *with id.* § 14-2-101 ("A governmental entity, school, or local education agency shall not mandate that a [p]erson receive a COVID-19 vaccine.").

As explained above, Plaintiff does not sufficiently allege nor is there any proof that Defendants required her to provide any physical documentation or digital storage of her COVID-19 Vaccine following the enactment of the Tennessee COVID Law. Instead, before the effective date of the Law, Defendants instituted a mandatory vaccination policy, and Plaintiff requested and

was granted a religious accommodation and placed on LOA Plus. She further admits she has never been asked to provide proof of vaccination. When Plaintiff requested in May 2022 and June 2022 to return to work from her leave of absence, she was advised that she could not return at that time because she had not received the COVID vaccination since Defendants' mandatory vaccination policy (which was lawful before and after the Tennessee COVID Law) was still in place at that time.

> 3. **Even If The Plain Language Of The Tennessee COVID Law Is Ambiguous, The Legislative Intent Clarifies That Private Tennessee Employers Can Mandate Vaccination As Long As They Do Not Require "Proof Of Vaccination."**

Even if this Court determines that the plain language of the Tennessee COVID Law is ambiguous, which it is not, this Court should look to legislative intent to resolve that ambiguity, which the Court may discern from the "broader statutory scheme, the history of the legislation, or other sources." *Seals v. H & F, Inc.*, 301 S.W. 3d 237, 242; *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010); *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002). Here the legislative intent is clear—private Tennessee employers may institute a mandatory vaccination policy as long as they do not require proof of vaccination.

Specifically, in discussions around the bill, the bill's co-sponsor—Jack Johnson—explicitly clarified that a private company may institute a mandatory vaccination policy as long as they do not require proof of vaccination. *See* S.B. 9014, 2021 Reg. Sess. (Tenn. 2021), available at https://tnga.granicus.com/player/clip/25569?viewid=610&metaid=626246&redirect=true&h=6f3ec6c7db4a6a8cb31d0e90163ca9ca, 47:40-51:15, 56:20-56:57.

As a result, to the extent there is any ambiguity surrounding the legislation, this Court should look to the legislative intent and dismiss Plaintiffs claims under the Tennessee COVID Law.

18

## V. CONCLUSION

For the reasons discussed above, Defendants request that this Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice as there is no genuine issue of material fact and Defendants are entitled to a judgment in their favor as a matter of law.

This the 12th day of July 2023.

          Respectfully submitted,

          **FISHER & PHILLIPS LLP**

By:    */s/ J. Gregory Grisham*
       J. Gregory Grisham (TN BPR#013810) 1715 Aaron Brenner Drive Suite 312 Memphis, Tennessee 38120
       (901) 526-0431 – telephone
       (901) 526-8183 – facsimile
       ggrisham@fisherphillips.com

       *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing *Memorandum in Support of Motion for Summary Judgment* was electronically filed with the Clerk of Court using the CM/ECF system which served the following individual:

Teresa A. Luna, Esquire
Spragins, Barnett, & Cobb, PLC
312 East Lafayette
Jackson, Tennessee 38301
tluna@spraginslaw.com
*Attorney for Plaintiff*

          */s/ J. Gregory Grisham*
          J. Gregory Grisham