**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **REDINA HAYSLETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No. 1:22-cv-1123-STA-jay** |
| | ) | |
| **TYSON FOODS, INC. and its wholly** | ) | |
| **owned subsidiary, THE HILLSHIRE** | ) | |
| **BRANDS COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT**

For twenty-six years Plaintiff Redina Hayslett worked for a series of different employers at a pork processing plant in Newbern, Tennessee. The plant is currently owned and operated by Defendants Tyson Foods, Inc. and The Hillshire Brands Company. On November 1, 2021, Defendants placed Plaintiff on unpaid leave when Plaintiff did not comply with a company policy requiring employees to receive a COVID-19 vaccine. Plaintiff alleges that Defendants acted in violation of Title VII of the Civil Rights Act of 1964 by discriminating against her on the basis of her religion. Plaintiff also alleges that Defendants violated Tenn. Code Ann. § 14–2–102(a), Tennessee's statutory protection for individuals who harbor an objection to taking a COVID-19 vaccine. Plaintiff now seeks judgment as a matter of law on her claim under the Tennessee statute. Plaintiff filed a Motion for Partial Summary Judgment (ECF No. 55) on July 7, 2023. For their part Defendants Tyson Foods, Inc. and The Hillshire Brands Company argue they are entitled to summary judgment on all of Plaintiff's claims for relief. Defendants filed

1

their Motion for Summary Judgment (ECF No. 56) on July 12, 2023.  The parties have now briefed the issues, and both Motions are ripe for determination.  For the reasons set forth below, Plaintiff's Motion is **DENIED**, and Defendants' Motion is **GRANTED in part, DENIED in part**.

## <u>BACKGROUND</u>

The Court has set out the full scope of Plaintiff's allegations in previous orders and need not review them here.  The Court has already ruled that Plaintiff's original Complaint stated a plausible claim under Tenn. Code Ann. § 14–2–102(a), Order Denying Defs.' Mot. to Dismiss, Oct. 20, 2022 (ECF No. 17); granted the State of Tennessee leave to intervene in the case and defend the constitutionality of the Tennessee law, Order Granting Mot. to Intervene, Mar. 22, 2023 (ECF No. 38); and held that Executive Order 13917 issued by the President of the United States on April 28, 2020, a series of recommendations from the CDC and OSHA, and the Federal Meat Inspection Act and its implementing regulations did not preempt Tenn. Code Ann. § 14–2–102(a), Order Denying Defs.' Mot. to Dismiss in Part, May 25, 2023 (ECF No. 54).  The parties have now completed fact discovery.  A jury trial is set to begin October 23, 2023.

In her Motion for Partial Summary Judgment, Plaintiff argues that no genuine issue of material fact exists as to her claim under Tenn. Code Ann. § 14–2–102(a) and that she is entitled to judgment as a matter of law.  The statute prohibits a private business from "compel[ling] or otherwise tak[ing] an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID-19 vaccine for any reason."  Plaintiff harbored a religious objection to the COVID-19 vaccine.  Defendants took disciplinary action against Plaintiff by placing her on unpaid administrative leave for one year because she did not provide proof of vaccination.  Plaintiff concedes that a dispute remains over whether Defendants

2

have permitted her to return to work since lifting their mandatory vaccination policy. Therefore, a jury will need to decide the extent of Plaintiff's damages arising out of Defendants' violation of Tenn. Code Ann. § 14–2–102(a). The Court should therefore grant Plaintiff judgment as a matter of law on Defendants' liability for the violation of Tennessee law.

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot carry her burden of proof on any of her claims. Plaintiff alleges that Defendants violated Title VII by discriminating against her on the basis of religion, both under a failure to accommodate theory and a disparate treatment theory. Defendants contend Plaintiff cannot prove a prima facie failure to accommodate. Plaintiff cannot show Defendants discharged her or disciplined her over her religious objections to the vaccine. Defendants offered Plaintiff a reasonable accommodation of an unpaid leave of absence, which Plaintiff accepted. And even if Plaintiff could prove a failure to accommodate, Defendants argue Plaintiff's proposed accommodation would have created an undue hardship. Plaintiff requested an accommodation of continuing to wear a mask at work, social distancing, and weekly testing for COVID-19. But Plaintiff's proposal would have put other employees at risk of infection. The undisputed proof shows Defendants had already implemented these measures and still experienced a high rate of spread among its employees at the Newbern plant. Defendants believe then they are entitled to summary judgment on Plaintiff's failure to accommodate claim.

Defendants go on to argue Plaintiff cannot prove her disparate treatment claim under Title VII or her Tennessee statutory claim. Plaintiff has no evidence Defendants treated her differently than other employees on the basis of her religion. This is fatal to her Title VII claim. As for the claim under Tenn. Code Ann. § 14–2–102(a), Plaintiff has not shown that Defendants ever requested proof of vaccination from her or that unpaid administrative leave was an adverse

action.   The Tennessee law prohibited local government and public schools from imposing vaccine mandates, not private corporations like Defendants.   The statute only prohibited private companies from requesting proof of vaccination.   Plaintiff has not adduced any evidence of Defendants requesting proof of vaccination from her.   Defendants therefore seek judgment as a matter of law on each of Plaintiff's claims for relief.

To decide the parties' Rule 56 Motions, the Court must consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law.   A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a factual contention.   Fed. R. Civ. P. 56(c)(1).   Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a).   Each party has filed its own statement of undisputed facts in support of its Rule 56 Motion and responded to the other party's statements of fact.   Each party has also filed a statement of additional facts as part of its response to the other side's Motion for Summary Judgment.   Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted.

The Hillshire Brands Company is a private, for-profit Maryland corporation authorized to conduct business in the State of Tennessee. Pl.'s Statement of Undisputed Fact ¶ 1.  The Hillshire Brands Company is a wholly owned subsidiary of Tyson Foods, Inc.  *Id.*  ¶ 2.  Defendants employed Plaintiff as a Packer/Scrapper at their Newbern, Tennessee facility.  *Id.* ¶ 4.  As a Packer/Scrapper, Plaintiff's job was to discard bad meat and send good meat down a conveyor belt.  *Id.*

Defendants began considering implementing a COVID-19 vaccine policy when the vaccine became available in the United States in early 2021.  Defs.' Concise Statement of Facts Not in Dispute ¶ 7.  Defendants relied on CDC guidance recommending vaccination as the best way to protect employees from the virus and the effects of the virus, including hospitalization and death.  *Id.* ¶ 8.  Defendants had a comprehensive, detailed system for tracking employee COVID-19 cases to monitor the number of team members who were COVID-positive or who had close contact with individuals who were positive.  *Id.* ¶ 9.  Defendants closely watched deaths and hospitalization rates from the virus and paid close attention to regular updates from CDC guidance on how to prevent the spread of COVID-19.  *Id.*  Defendants' chief medical officer regularly reviewed external data concerning the pandemic, independent of CDC information.  *Id.* ¶ 10.

In a July 30, 2021, online publication titled "Guidance for Implementing COVID19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage," the CDC discussed, among other things, the effectiveness of vaccines and the protection they offered against the Delta variant, concluding that "COVID-19 vaccination remains the most effective means to achieve control of the pandemic."  *Id.* ¶ 11.  The publication reported that for the period between June 19, and July 23, 2021, the Delta

variant caused a 300% increase in the number of COVID-19 infections nationwide.  *Id*.  The CDC noted that the Delta variant was "more than two times as transmissible as the original strains circulating at the start of the pandemic and [was] causing large, rapid increases in infections, which could compromise the capacity of some local and regional health care systems to provide health care for the communities they serve."  *Id*.  The CDC recommended that businesses and other institutions "regularly assess the need for prevention strategies to avoid stressing health care capacity and imperiling adequate care for both COVID-19 and other non-COVID-19 conditions."  *Id*.

When the Delta variant appeared and seemed to be more contagious and cause more deaths than previous strains, Defendants implemented a mandatory vaccination policy.  *Id*. ¶¶ 12, 14.  In August 2021 when Defendants announced the vaccine policy, employees already had been wearing masks, washing their hands, social distancing at work, and getting tested at work when they had symptoms or felt ill.  *Id*. ¶ 13.  Even then, many employees at the Newbern plant had gotten sick.  *Id*.  On August 3, 2021, Hillshire Brands Company announced to all team members that as a condition of continued employment and in the absence of documented and approved reasonable accommodations for disability or sincerely held religious beliefs, practices or observances, all U.S.-based Tyson employees would be required to be vaccinated against COVID-19 and to have provided proof of vaccination to Tyson on or before November 1, 2021.  Pl.'s Statement of Undisputed Fact ¶ 6.  The vaccine mandate applied to all employees regardless of their religious beliefs or lack of religious beliefs.  Defs.' Concise Statement of Facts Not in Dispute ¶ 4.

On August 10, 2021, Tyson distributed a Frequently Asked Questions (FAQ) document to team members addressing common questions about the Vaccination Policy.  Pl.'s Statement of Undisputed Fact ¶ 7.  Question #3 read:

> What happens if a team member refuses to be fully vaccinated by the date in the announcement?
>
> In order to keep all of our team members safe, being fully vaccinated is a condition of employment. If a team member has not been fully vaccinated by the applicable deadline (October 1, 2021 or Nov. 1, 2021), or been granted a religious or medical accommodation, their employment will be terminated.

*Id.*   On August 30, 2021, Tyson distributed its COVID-19 Vaccination Policy for U.S. Employees.  *Id.* ¶ 8.  That Policy explained that employees seeking a religious exemption were required to submit their requests to HR.  *Id.*  Defendants offered Leave of Absence Plus (or "LOA+"), which began on November 1, 2021, as an accommodation to those employees who had sincerely held religious beliefs, practices, or observances and or who sought a medical accommodation.  Defs.' Concise Statement of Facts Not in Dispute ¶ 20.

Defendants decided to offer leaves of absence as the only permitted accommodation.  *Id.* ¶ 22.  Approximately seven hundred employees work at Defendants' Newbern plant.  *Id.* ¶ 26.  Despite the fact that employees were already distancing, masking, and testing, the rate of COVID spread in the community remained high.  *Id.* ¶ 22.  Defendants determined that allowing an unvaccinated employee like Plaintiff to remain at work, even with masking, social distancing, and frequent testing, would create health and safety risks.  *Id.* ¶ 24.  The parties dispute the extent to which Plaintiff's job required her to work in close proximity to other employees or come into contact with employees outside of her own work area.  Plaintiff worked on an assembly line with two other employees.  *Id.* ¶ 27.  Another employee would come to the line and empty the tub as Plaintiff filled it.  *Id.*  Plaintiff also came into contact with other employees

in common areas like a handwashing station and had an employee relieve her when she took lunch.  *Id*. ¶ 25.  Plaintiff maintains that she could keep a distance of 12 feet from other employees on the production line.  Pl.'s Resp. to Defs. Concise Statement ¶¶ 25, 27.

Plaintiff testified that her religious beliefs conflicted with Defendants' requirement that all employees receive the COVID vaccine.  *Id*. ¶ 16.  On September 3, 2021, Plaintiff submitted a religious accommodation request, in which she claimed her belief in the power of prayer, faith in Christ, religious freedom, and First Amendment right to practice her religion freely prohibited her from receiving vaccination for COVID-19. Pl.'s Statement of Undisputed Fact ¶ 9.  In the same request for religious accommodation submitted on September 3, 2021, Plaintiff stated she would be open to reasonable accommodations that did not involve taking a year's leave of absence from work.  *Id*. ¶ 10.  She later explained in a letter to Human Resources that she would agree to frequent testing and wearing a mask at work.  *Id*.  Tyson denied Plaintiff's proposed accommodation.  *Id*. ¶ 11.  Defendants instructed Plaintiff her only alternatives were to get the COVID-19 vaccine, go on unpaid leave, or be terminated.  *Id.* ¶ 13.

On October 25, 2021, Plaintiff sent a letter to Human Resources, again requesting that she not be placed on unpaid leave or removed from her position.  *Id*. ¶ 13.  Plaintiff cited the fact that vaccinated individuals could also spread COVID-19.  *Id*.  She also requested the chance to continue working as long as she continued to wear a mask and maintained a distance of 12 feet from other employees.  *Id*. ¶ 14.  Defendants denied Plaintiffs' request to remain at work under these conditions.  *Id*. ¶ 15.  No one at Tyson said anything derogatory to Plaintiff, who is Baptist, about her religious beliefs.  Defs.' Concise Statement of Facts Not in Dispute ¶ 18.  Plaintiff elected to take the leave of absence on October 27, 2022.  *Id*. ¶ 21.

Defendants formally placed Plaintiff on unpaid leave on November 1, 2021. Pl.'s Statement of Undisputed Fact ¶¶ 5, 15.  There were no attendance or other disciplinary concerns at issue regarding Defendants' decision to place Plaintiff on leave or regarding her request to return to work. *Id.* ¶ 12.  As part of the leave of absence, Plaintiff remained an employee and retained her company health insurance.  Defs.' Concise Statement of Facts Not in Dispute ¶ 29. Defendants terminated all employees who refused to be vaccinated by the deadline and had not been granted a religious or medical accommodation.  *Id.* ¶ 30.  After November 1, 2021, all of Defendants' employees who were at work had received COVID vaccinations. *Id*. ¶ 31.

During her period of unpaid leave, Plaintiff made several requests to return to work based on her view that her workstation was more than 12 feet away from other employees.  *Id.* ¶¶ 16, 17.  Between May 3, 2022, and May 24, 2022, Plaintiff informed Defendants she was electing to end her unpaid leave of absence and asked to return to work.  *Id.*  The parties dispute whether Defendants denied those requests because Plaintiff had not received the vaccine or because she could not provide proof of vaccination.

On October 27, 2022, Tyson sent Plaintiff a letter informing her that "Tyson has determined team members on an LOA+ due to the vaccine requirement may begin the process to return to work." *Id.* ¶ 18.  Tyson's letter further stated that "Tyson is extending you an unconditional offer to return to work in a similar job at the same or greater rate of pay." *Id*. Employees were instructed to notify Tyson by email no later than November 11, 2022, if they wanted to accept an available job. *Id.* ¶ 19.  On November 11, 2022, Plaintiff through counsel accepted the offer to return to work. *Id.* ¶ 20.

The parties dispute several other issues at summary judgment.  First, the parties disagree over whether Defendants ever asked Plaintiff to furnish proof of vaccination, an issue that goes

to the elements of Plaintiff's claim under Tenn. Code Ann. § 14–2–102(a).  The real dispute concerns the nature of Defendants' Leave of Absence Plus policy and whether the policy reasonably accommodated Plaintiff's religious objections to vaccination.  From Plaintiff's perspective, an unpaid leave of absence was no accommodation at all.  If anything, the policy constituted disciplinary action.  Defendants take the position that Leave of Absence Plus was itself the reasonable accommodation for Plaintiff's religious objections.  Plaintiff never had to take the vaccine and did not actually lose her job.  So going on the unpaid leave of absence cannot be considered disciplinary.  The parties also dispute whether Defendants could have reasonably offered Plaintiff an alternative accommodation.  Plaintiff claims her request to continue working while wearing a mask and social distancing was a reasonable accommodation of her beliefs.  Plaintiff points out that even after the vaccine mandate took effect, vaccinated employees could still get infected.  Defendants contend that Plaintiff's proposed accommodation would have caused an undue burden on Defendants' operations at the Newbern plant.  Finally, the parties disagree over the jobs Defendants have offered Plaintiff since the lifting of the vaccine mandate in 2022.  The Court discusses below the impact of these factual disputes on the questions of law presented in the Motions for Summary Judgment.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."  *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).  In reviewing a

motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Court has subject-matter jurisdiction in this case under 28 U.S.C. § 1331(a). The Amended Complaint alleges violations of Title VII of the Civil Rights Act of 1964, making this a civil action arising under the laws of the United States. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). As for Plaintiff's claim under Tennessee law, 28 U.S.C. § 1367(a) gives district courts supplemental jurisdiction in any civil action in which a court has original jurisdiction but only "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This means the supplemental claims must "derive from a common nucleus of operative fact." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1753 n.1 (2019) (Alito, J., dissenting) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725

(1966)). The Court finds that Plaintiff's claim for the violation of Tenn. Code Ann. § 14–2–102(a) meets this standard. The claim is based on Plaintiff's employment at Defendants' Newbern plant and Defendants' vaccination policy for employees like Plaintiff. Therefore, the Court can properly exercise supplemental jurisdiction over the claim.

## ANALYSIS

The issue presented at summary judgment is whether Defendants are entitled to judgment as a matter of law on Plaintiff's Title VII claims and whether either side is entitled to judgment as a matter of law on Plaintiff's claim under Tenn. Code Ann. § 14–2–102(a).

### I. Title VII – Disparate Treatment

As an initial matter, the Amended Complaint alleged two distinct violations of Title VII: disparate treatment on the basis of Plaintiff's religion and a failure to accommodate Plaintiff's sincerely held religious beliefs. Defendants have moved for summary judgment on both claims. In support of their argument on Plaintiff's disparate treatment claim, Defendants have shown that Tyson's vaccine mandate applied to all employees regardless of their religious beliefs or lack of religious beliefs. *See* Defs.' Concise Statement of Facts Not in Dispute ¶ 4. This undisputed proof would negate one of the required elements of Plaintiff's Title VII disparate treatment claim. *See Hudson v. City of Highland Park, Mich.*, 943 F.3d 792, 802 (6th Cir. 2019) (holding that an element of a disparate treatment claim based on religion is that the defendant treated the plaintiff differently than a similarly situated employee who does not follow the same religious beliefs).

As part of her response to Defendants' Motion for Summary Judgment, Plaintiff has conceded that she is no longer pressing her Title VII disparate treatment claim. *See* Pl.'s Resp. in Opp'n 6 n.2 ("Ms. Hayslett's Title VII claim for religious discrimination involves only a

religious accommodation claim and not a disparate treatment claim. To the extent anything different was suggested in the Amended Complaint, Ms. Hayslett now clarifies the issue for this Court."). In light of this clarification and based on the undisputed proof that Defendants did not treat plaintiff differently than a similarly situated employee who did not hold a religious objection to vaccination, the Court concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's Title VII disparate treatment claim. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to this issue.

## II. Title VII – Failure to Accommodate

Title VII makes it an unlawful employment practice for an employer to "discharge" or "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The Supreme Court has remarked that "this definition imposes upon employers a statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977)). "Title VII does not demand mere neutrality with regard to religious practices but instead gives them favored treatment in order to ensure religious persons' full participation in the workforce." *Groff v. DeJoy*, 600 U.S. ---, 143 S.Ct. 2279, 2291 n.9 (2023) (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775,

135 S.Ct. 2028, 192 L.Ed.2d 35 (2015) (internal quotation marks omitted).

**A. Plaintiff's Prima Facie Case of Religious Discrimination**

The Sixth Circuit has adopted "two-step, burden-shifting framework" for analyzing Title VII failure-to-accommodate cases. *Truskey v. Vilsack*, No. 21-5821, 2022 WL 3572980, at *2 (6th Cir. Aug. 19, 2022) (citing *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)). A plaintiff must first establish a prima facie case of discrimination by showing (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she has informed the employer about the conflict; and (3) she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Reed*, 569 F.3d at 580 (citing *Tepper*, 505 F.3d at 514). At the second step of the inquiry, the burden shifts to the employer to show "that it could not reasonably accommodate the employee without undue hardship." *Reed*, 569 F.3d at 580.

The parties do not contest the first two showings required for Plaintiff's prima facie case of religious discrimination, at least for purposes of deciding Defendants' Motion for Summary Judgment: Plaintiff holds a sincere religious belief that conflicted with Defendants' vaccine mandate, and Plaintiff informed Defendants about the conflict. The proof shows that Plaintiff holds a conscience objection to the COVID-19 vaccine and believes that taking the vaccine would conflict with a number of sincerely held religious precepts. It is likewise undisputed that Plaintiff informed HR of her objection to the vaccine after Defendants announced their policy requiring all personnel to take the vaccine and established a process for objecting employees to request a religious or medical accommodation. This evidence suffices to make out the first two prongs of the failure to accommodate claim.

The parties disagree over the third element which requires Plaintiff to show she was discharged or disciplined for failing to comply with Tyson's vaccine mandate. In Defendants'

14

view, Plaintiff cannot make the showing.  Plaintiff was not discharged because she continued to be a Tyson employee even after the mandate took effect.  And Defendants never meted out any discipline over Plaintiff's unwillingness to receive the vaccine.  Before the mandate went into effect, Defendants offered employees with a religious objection to the vaccine an accommodation for their sincerely held beliefs, the program Defendants dubbed Leave of Absence Plus, whereby objecting employees went on administrative leave without pay for up to one year and retained their company health insurance.  So without proof of discharge or discipline, Plaintiff has not made a prima facie case of religious discrimination.  Plaintiff counters that Tyson's Leave of Absence Plus program was essentially employee discipline. Defendants' "accommodation" resulted in Plaintiff getting one year of leave without pay.  Even after Defendants lifted the vaccine mandate, Plaintiff has still not secured a new position at the Newbern plant.  Plaintiff argues a jury could find under the circumstances that Defendants have "discharged" or "disciplined" her over her failure to comply with the vaccine mandate.

The issue presented is whether Plaintiff's leave of absence without pay for nearly a year is enough to satisfy the discharge or discipline element of her religious accommodation claim. The Court can quickly dispose of the issue of whether Defendants discharged Plaintiff in violation of Title VII.  There is no genuine dispute over the fact that Defendants never discharged Plaintiff.[1]  Tyson employees who had not been vaccinated and did not request an accommodation were terminated on November 1, 2021.  The undisputed proof shows that by electing to take the Leave of Absence Plus option, Plaintiff continued to be employed by

---

[1] *See Hayslett v. Tyson Foods, Inc.*, 636 F.Supp.3d 900, 904–05 (W.D. Tenn. 2022) (holding that the Complaint plausibly alleged that Defendants had terminated Plaintiff's employment as part of Plaintiff's claim under Tenn. law).

Defendants and receive employee benefits (her health insurance), presumably through the end of Tyson's vaccine mandate in October 2022. Also, during her period of leave without pay, Plaintiff made requests to return to work. This evidence is simply incompatible with the notion Defendants discharged Plaintiff. And there is no evidence Plaintiff ever resigned her job, meaning Plaintiff cannot prove Defendants constructively discharged her. *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022) ("A constructive discharge does not occur until the employee resigns.").[2] There is also proof Defendants contacted Plaintiff about returning to work in October 2022. The fact that Plaintiff has not yet been placed for a position does not show that she was discharged. In sum, there is no evidence Defendants discharged Plaintiff from her job.

Plaintiff's religious accommodation claim will only survive then if she can prove Defendants "disciplined" Plaintiff over her religious objections to vaccination. The Sixth Circuit has decided religious accommodation cases where the employer had disciplined but not discharged an employee with a religious objection. However, the Court of Appeals has never precisely defined what constitutes "discipline" as part of a failure to accommodate a religious employee's beliefs. For example, in *Cooper v. Oak Rubber Co.*, 15 F.3d 1375 (6th Cir. 1994), the parties did not dispute that the employee had received discipline. *Cooper*, 15 F.3d at 1379 n.1 ("We need not decide whether Cooper was constructively discharged for failing to comply with Oak's Saturday work requirement, because there is no dispute that she was disciplined.").

---

[2] "The constructive discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Penn. St. Police v. Suders*, 542 U.S. 129, 141 (2004)). As one of the basic elements of a constructive discharge claim, a plaintiff must allege and prove that she actually resigned her job. *Id.*

Because the parties did not contest the issue, the Court of Appeals never addressed what constitutes "discipline."

In *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351 (6th Cir. 2020), the Court of Appeals once more was presented with a Title VII religious accommodation claim by a plaintiff who had been "disciplined." The plaintiff in *Stanley* worked as a stewardess for an airline and converted to Islam shortly after her employment began. As part of her in-flight duties, Plaintiff was required to serve alcoholic beverages. But as a Muslim, she was not permitted to serve alcohol as a tenet of her faith. The airline gave the plaintiff "three options: (1) take personal leave and seek another position at the airline, (2) agree to serve and sell alcohol, or (3) voluntarily resign." *Stanley*, 808 F. App'x at 354. The airline rejected the plaintiff's proposed accommodations and subsequently put the plaintiff on one year of "non-disciplinary, unpaid administrative leave." At summary judgment, the airline did not dispute that the plaintiff could make a prima facie religious accommodation claim. *Id.* at 356 ("For the purposes of its summary judgment motion, ExpressJet concedes that Stanley has met the *prima facie* requirement."). Despite the factual similarities between *Stanley* and the case at bar, the Sixth Circuit decided the case on other grounds. *Id.* at 355 (holding that the Railway Labor Act preempted the plaintiff's claims because the collective bargaining agreement between the airline and the plaintiff's union could "conclusively resolve Stanley's religious-discrimination claims"). *Stanley* never reached the question of whether one year of unpaid leave constituted "discipline."

Looking to the text of the statute, the Civil Rights Act of 1964 does not define "discipline" or use the term at all in § 2000e-2(a)(1). Title VII prohibits an employer from "discharg[ing] . . . or *otherwise discriminat[ing]* against any individual with respect to his compensation, terms, conditions, or privileges of employment" on account of the individual's

religion.  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  Rather than making "discharge or discipline" an unlawful employment practice, the statute makes "discharge or otherwise discriminating . . . with respect to . . . compensation, terms, conditions, or privileges of employment" unlawful.  As a matter of statutory interpretation, Title VII arguably bars employers from changing the "terms" of employment or denying "compensation" to employees with religious objections to an employment requirement.  *Reed*, 569 F.3d at 580 ("Unless a plaintiff has suffered *some independent harm* caused by a conflict between his employment obligation and his religion, a defendant has no duty to make any kind of accommodation.") (emphasis added).  In other words, Title VII prohibits employers from taking "adverse employment actions" against religious objectors.

In the Title VII, anti-discrimination context, an adverse employment action is "a materially adverse change in the terms and conditions of a plaintiff's employment."  *Redlin v. Grosse Pointe Public Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc) (other citation omitted).  The Supreme Court has defined the term to include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).  The Sixth Circuit has suggested in dicta that "discharge or discipline" and "adverse employment action" may mean different things in different contexts.  *Reed*, 569 F.3d at 581 ("[W]hatever 'discharge or discipline' or 'adverse employment action' may mean in other contexts, . . . .").

18

The Sixth Circuit, however, has never held in a reported decision that proof of an "adverse employment action" suffices to make out the employee "discipline" element of a religious accommodation claim. *But see Truskey*, 2022 WL 3572980, at *2 (defining the third element of the prima facie showing as the employee "suffered an *adverse employment outcome* for failing to comply with the conflicting employment requirement") (emphasis added). On the contrary, the Court of Appeals has steadfastly held that "discharge or discipline" is a required element of a Title VII religious accommodation claim. This was true following the 1991 amendments to Title VII.[3] *Goldmeier*, 337 F.3d at 634 ("We have consistently held that a prima facie case of religious discrimination requires discharge or discipline for failure to comply with an employment requirement conflicting with a [sic] [religious] requirement.") (collecting cases). And the Court of Appeals specifically declined an invitation to reconsider whether proof of other kinds of adverse employment actions could prove a failure to accommodate. *Reed*, 569 F.3d at 581 ("But because we hold that the specific accommodation Reed challenges here does not rise to the level of an adverse employment action, we are not presented with the issue of whether a plaintiff can proceed on a showing of an employment action that is 'adverse' but is not a form of 'discharge or discipline.'"); *see also id.* at 580 ("We have declined to relieve a religious accommodation plaintiff of his burden to establish a prima facie case, including the requirement that he demonstrate that he has been discharged or disciplined.").

---

[3] To the extent that the Sixth Circuit's holdings are based on its reading of the statute, this Court is bound to follow the published opinions of the Court of Appeals, including the Sixth Circuit's "statutory interpretation." *In re Penfound*, 7 F.4th 527, 533 (6th Cir. 2021) (citing *United States v. Mateen*, 739 F.3d 300, 304 (6th Cir.), *vacated en banc on other grounds*, 764 F.3d 627 (6th Cir. 2014). "[C]oncerns about maintaining settled law are strong when the question is one of statutory interpretation." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 899, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007).

Giving the term "discipline" its ordinary and common meaning, the Court holds that a reasonable jury could find that Plaintiff's leave without pay for almost a year was a material adverse action and constituted employee "discipline."  Viewing the evidence in a light most favorable to Plaintiff, Plaintiff suffered an "independent harm caused by a conflict between [her] employment obligation and [her] religion."  *Reed*, 569 F.3d at 580.  Defendants' mandatory vaccination policy made full vaccination a condition of continued employment.  *See* Defs.' Resp. to EEOC Complaint, Page ID 370, ex. B to Pl.'s Resp. in Opp'n (ECF No. 55-4).  As part of the vaccine mandate, Defendants informed employees that any employee who had not taken the vaccine by certain dates, in Plaintiff's case November 1, 2021, would be subject to termination. In other words, Defendants started with an ultimatum to all their employees: receive a vaccine and provide proof of vaccination or face termination.  Defendants' vaccine policy posed a conflict of conscience for Plaintiff and left her only the choice between termination or an open-ended leave of absence without pay.  Had Plaintiff not elected to take the leave of absence, it is undisputed Defendants would have terminated her employment, meaning there would be no question that Defendants had "discharged" her and she would therefore be able to prove a prima facie case of religious discrimination.  As it happened, Plaintiff elected to take the unpaid leave offered by Defendants.

Even then, Defendants' Leave of Absence Plus option had most, if not all, of the characteristics of disciplinary action.  Plaintiff was sent home without pay and not allowed to return to work.  Plaintiff remained on unpaid leave for nearly a year.  The Leave of Absence Plus alternative was limited and would remain available only for twelve months, meaning Plaintiff had no guarantee she could ever return to the job.  The only sure way to get her job back was to take the vaccine.  Even after Defendants dropped the vaccine mandate, Defendants have not

given Plaintiff her old position or any other position.  The only meaningful difference between Leave of Absence Plus and outright termination is the fact that Plaintiff continued to receive company-provided health insurance, though the record is not clear on whether Plaintiff continued to receive this benefit after Defendants lifted the vaccine mandate in October.  In short, Defendants' Leave of Absence Plus option fundamentally altered Plaintiff's employment relationship with Defendant, all because she refused to comply with Tyson's vaccine mandate. Plaintiff's indeterminate leave without pay was not merely an "incremental adjustment" to her compensation but represented a "*materially* adverse change in the terms or conditions of [her] employment."  *Cf. Reed*, 569 F.3d at 581 ("[A] plaintiff does not carry his burden merely by showing that he has lost some amount of pay as a result of a proffered accommodation.") (citing *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)[4]).  A jury could find from this proof that Defendants' Leave of Absence Plus program was no accommodation at all and instead rose to the level of employee "discipline."

Defendants make several arguments to the contrary, none of which the Court finds convincing.  On the facts, Defendants correctly point out that Plaintiff never received a disciplinary warning over her refusal to receive a vaccine and was never personally warned about her lack of vaccination.  Defendants have not cited any authority to show why that matters. Nothing in the Sixth Circuit's religious accommodation case law requires evidence of an employee being warned prior to an employer taking adverse action against the employee.  The

---

[4] In *Kocsis*, the Sixth Circuit held that a nurse had failed to prove her disability discrimination claims for lack of evidence to show she had suffered a materially adverse employment action.  The employer had moved the nurse to a different job but with the same pay, benefits, job duties, and overall prestige.  *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886–87 (6th Cir. 1996).  *Kocsis* did not involve a religious accommodation claim or reach any conclusions about the effect of an indefinite leave of absence.

21

undisputed proof shows Defendants announced the vaccine mandate, Plaintiff was subject to the vaccine mandate, Defendants rejected Plaintiff's requested accommodations, and Defendants gave Plaintiff the choice of either termination or taking unpaid leave.  It is not clear to the Court then why the fact Defendants did not warn Plaintiff or specifically caution her about the consequences of her refusal to take the vaccine somehow means Defendants did not "discipline" her.  Defendants' factual arguments do not alter the Court's conclusion that unpaid leave for an indeterminate period of time could rise to the level of disciplinary action.

On the law, Defendants argue that placing an employee on unpaid leave is a reasonable accommodation and cannot qualify as "discipline."  This argument blurs the distinction between Plaintiff's burden to prove that Defendants disciplined her over the conflict between her beliefs and her job and Defendants' burden to prove the reasonableness of their accommodation.  It is nevertheless true the Sixth Circuit has held that being "forced to take days off from work without pay in order to avoid Saturday work," resulting in reduced annual pay and a lower projected pension, does not satisfy the "discharge or discipline" element of a religious accommodation claim.  *Tepper*, 505 F.3d at 514.  *Tepper* cited for support the Supreme Court's remark that "the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70–71, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (quoting *Nashville Gas Co. v. Satty*, 434 U.S. 136, 145, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977)). Standing alone, this single statement could be read to imply that unpaid leave is simply not an adverse employment action.  But the Court of Appeals and the Supreme Court addressed this comment to very different factual circumstances than the circumstances Plaintiff confronted here.

The comment originated in *Satty*, which was not a religious accommodation case. One of the issues in *Satty* was whether a company violated Title VII by excluding pregnancy as one of the conditions covered by its paid sick leave policy. *Satty*, 434 U.S. at 138. Specifically, a female employee alleged that the policy violated 42 U.S.C.§ 2000e-2(a)(2), which makes it an unlawful employment practice "to limit, segregate, or classify" employees "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(2). The Supreme Court briefly considered whether an employee could establish a violation of § 2000e-2(a)(2) with proof that the leave policy had a disparate impact on women before holding that the plaintiff in *Satty* had offered no such proof. The Court noted in dicta that leave without pay during a pregnancy did not establish a loss "of employment opportunities" and did not "otherwise adversely affect [] status as an employee," the two grounds protected under § 2000e-2(a)(2). *Id.* at 144–45. *Satty* was not a religious accommodation case, concerned a different paragraph of § 2000e-2(a), and is otherwise factually distinguishable. By itself, *Satty* does not support Defendants' proposition that leave without pay is a reasonable accommodation and cannot meet the definition of employee "discipline."

*Philbrook*, which cited *Satty*'s dicta about leave without pay, and *Tepper*, which cited *Philbrook*, were religious accommodation cases. In *Philbrook*, a public school teacher alleged that the school district's personnel policy required him to miss six days of work without pay each year for the observance of religious holidays. *Philbrook*, 479 U.S. at 62–63. The Supreme Court concluded that "[t]he provision of unpaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in

fact work." *Id.* at 70. *Philbrook* quoted *Satty*'s comment about "the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work." Rather than establishing a bright line rule concerning unpaid leave, *Philbrook* simply concluded that being required to take leave without pay in order to observe religious holidays six times during the year did not violate Title VII. The situation in *Philbrook* is quite distinguishable from Defendants' policy of giving Plaintiff the choice between termination or up to one year of unpaid leave from her job.

In *Tepper*, a local post office discontinued an accommodation for a postal worker who was not regularly required to work Saturdays for religious reasons. The letter carrier went from having Saturdays off 92% of the time in 2002 before staffing cuts required the change in his schedule to having less than half the Saturdays off in 2003, then back to 73% of Saturdays off in 2004, and then just half the Saturdays in 2005. *Tepper*, 505 F.3d at 512–13. The Sixth Circuit affirmed the dismissal of the worker's religious accommodation claim because the plaintiff could not prove that the postal service had constructively discharged him and could not show that being required to take unpaid time off constituted "discipline." The Court does not read *Tepper*, or *Philbrook* for that matter, to stand for the proposition that being placed on leave without pay indefinitely can never rise to the level of employee discipline, much less that it will always be a reasonable accommodation. If anything, the cases show that taking leave without pay on a situational basis when regularly scheduled work conflicts with religious obligations and forces a religious employee to go without pay sporadically and only for a day at a time does not violate Title VII. *Tepper* does not mean employers could offer unpaid leave for months at a time, call the leave an "accommodation," and satisfy their Title VII obligation to accommodate.

Defendants raise one last legal argument concerning Plaintiff's prima facie case of discrimination. Defendants argue that as a matter of law Plaintiff cannot use the accommodation

24

offered by Defendants to prove that Defendants disciplined her over her refusal to take the vaccine. Defs.' Reply 3 (ECF No. 65) ("Under Sixth Circuit precedent, a plaintiff may not rely on the alleged unreasonableness of an accommodation as a substitute for proving that she was discharged or disciplined to meet the prima facie case requirement for a failure to accommodate claim."). Defendants cite two cases in support of this proposition: *Reed* and *McCray v. Federal Express Corp.*, No. 2:17-cv-2918-JPM-cgc, 2020 WL 4676384 (W.D. Tenn. Aug. 12, 2020).

The plaintiff in *Reed v. UAW* raised a religious objection to paying union dues and challenged the union's accommodation for objecting employees at the plaintiff's auto plant. UAW had a preexisting agreement with the plant to permit employees with a bona fide religious objection to joining or supporting a union to make in lieu of paying union dues a contribution to a designated charity equal to the full amount of the dues. The plaintiff did not allege that the UAW had discharged or disciplined him, just that the agreement required him to pay a higher amount than similarly situated employees who had a non-religious objection to the union contributing a portion of their dues to political causes. In a 2-1 panel opinion, the Court of Appeals affirmed the district court's dismissal of the Title VII for lack of proof that the plaintiff had been discharged or disciplined over his objection to paying union dues.

*Reed* held that a religious accommodation plaintiff cannot get around the discharge or discipline element of the failure to accommodate claim "by insisting that the only controversy . . . concerns the reasonableness—not the necessity—of his accommodation." *Reed*, 569 F.3d at 580 ("We have declined to relieve a religious accommodation plaintiff of his burden to establish a prima facie case, including the requirement that he demonstrate that he has been discharged or disciplined.") (citing *Goldmeier*, 337 F.3d at 637). The fact that UAW had agreed to an accommodation, that is, allowing the religious objector to make a charitable contribution instead

of paying union dues, did not allow the plaintiff to dispense with proof of discharge or discipline. *Id*. The Court of Appeals also found that the auto worker had not shown that his loss of pay under the UAW's religious exemption was materially adverse, much less that it was disciplinary. *Reed*, 569 F.3d at 581 ("[T]he incremental adjustment to Reed's pay as a result of his charity-substitution payment is not actionable: It is not a *materially* adverse change in the terms or conditions of his employment."). The panel stressed that the plaintiff had not proven "any 'discipline' other than the accommodation he claimed was unreasonable." *Id*. *Reed* supports Defendants' general point about the need for proof of discharge or discipline. But *Reed* never addressed whether an employment action or personnel policy addressed to an employee with a religious objection will always constitute an "accommodation" or can never qualify as employee "discipline." Unlike the plaintiff in *Reed*, Plaintiff has met her burden with proof to show "some independent harm caused by a conflict between his employment obligation and his religion." *Id*.

In *McCray*, another member of this Court cited *Reed* for the proposition that "[t]he discipline or discharge suffered by the employee cannot be one and the same with the employer's provision of an unreasonable accommodation or its denial of a reasonable accommodation." *McCray*, 2020 WL 4676384, at *10 (citing *Reed*, 569 F.3d at 581). The plaintiff in *McCray* was ordained clergy in her church and volunteered time to her congregation's prison ministry for incarcerated women. When the plaintiff requested to have three weeks off for her volunteer ministry activities, her employer's leave policy required her first to use up all paid time off before going on unpaid leave. *Id.* at *2-*3. The Court granted the employer summary judgment on the plaintiff's religious accommodation claim, holding that she had not proven the employer had discharged or disciplined her over her objections to the leave policy. *Id.* at *10 ("Aside from

26

FedEx's refusal to allow her to take unpaid time off before using her paid time off, FedEx did not discipline McCray in connection with her request for a religious accommodation.").

The Court finds that the situation in *McCray* was more akin to the situation in *Reed* or *Tepper*, though none of these cases has much in common with the facts of this case. There is no indication from the facts of *McCray* that the plaintiff's employer applied its leave policy in a discriminatory manner or used the policy to remove the employee from her job for nearly a year. By contrast, Defendants' vaccine mandate and the choice it gave Plaintiff between termination and one year of unpaid leave was a materially adverse change in Plaintiff's employment.

Whether the leave of absence was an actual accommodation of Plaintiff's religious beliefs or constituted discrimination against Plaintiff by altering the terms and conditions of Plaintiff's employment is a question for the trier of fact. Assuming for purposes of summary judgment that Plaintiff could make her prima facie case, the burden shifts to Defendants to show that "that it could not reasonably accommodate the employee without undue hardship." *Reed*, 569 F.3d at 580.

**B. Defendant's Accommodation and Undue Burden**

Defendants will still be entitled to judgment as a matter of law if Defendants can show that their proffered accommodation was reasonable. "[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Philbrook*, 479 U.S. at 68. The determination of an accommodation's reasonableness is "case-by-case" and "is generally a question of fact for a jury." *Crider v. Univ. of Tenn., Knoxville*, 492 F. App'x 609, 612 (6th Cir. 2012) (citing *Smith v. Pyro Min. Co.*, 827

F.2d 1081, 1085 (6th Cir. 1987) and *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006)).

Just as a jury could find from the evidence that Defendants' Leave of Absence Plus program was a form of "discipline," questions remain over whether Defendants' policy was a reasonable "accommodation." Defendants have introduced undisputed evidence that the spike in COVID illnesses and deaths occasioned by the Delta variant in summer 2021 prompted Defendants to adopt the vaccine mandate. Defs.' Concise Statement of Facts Not in Dispute ¶¶ 12, 14. At that time, Defendants already required employees to wear masks, wash their hands frequently, maintain strict social distancing at work, and get tested at work when they felt ill. *Id*. ¶13. Even with these protective measures, employees at the Newbern plant had gotten sick. *Id*. Based on the availability of the vaccine and guidance from the CDC about the efficacy of vaccination, Defendants adopted a vaccine mandate for all employees. A reasonable jury could find from this proof that Defendants acted reasonably in taking steps to get more of their employees vaccinated and limit the manner in which they accommodated employees who had some objection to vaccination.

The proof is not so one-sided, however, to show that Defendants are entitled to judgment as a matter of law on the reasonableness of their policy. Plaintiff has shown, and Defendants do not dispute that, 96% of Defendants' workforce was already vaccinated before the vaccine mandate took effect November 1, 2021. Pl.'s Statement of Add'l Fact ¶ 11. Plaintiff asserts that in light of the high rate of vaccination, Defendants cannot show why allowing a small percentage of employees with a religious objection to the vaccine posed an unreasonable risk to the workers at the plant. It is also undisputed that there were more outbreaks of COVID-19 at the plant after the vaccine mandate. *Id*. ¶ 10. Plaintiff even sought relief from the vaccine mandate and

28

requested a return to work in May 2022.  Defendants have not shown why it remained reasonable to keep Plaintiff off the job six months after the Delta surge and when experience showed the vaccine did not completely eliminate the spread of infection at the plant.  A jury will need to decide the reasonableness of Defendants' policy under all of these circumstances.

Even assuming Defendants cannot show that Leave of Absence Plus was a reasonable accommodation for Plaintiff's religious objection to the vaccine, Defendant will still be entitled to summary judgment if they can prove undue hardship.  The Supreme Court recently clarified the "undue hardship" standard in Title VII religious accommodation cases, holding that an "employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."  *Groff*, 143 S.Ct. at 2295 (citing *Hardison*, 432 U.S. 63 at).  *Groff* emphasized the "fact-specific," context-driven nature of the undue burden inquiry.  *Groff*, 143 S.Ct. at 2294 ("This fact-specific inquiry comports with both *Hardison* and the meaning of 'undue hardship' in ordinary speech."); *id*. at 2297 ("Having clarified the Title VII undue-hardship standard, we think it appropriate to leave the context-specific application of that clarified standard to the lower courts in the first instance.").  This includes "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 2295 (citation omitted).

The Court holds that based on the fact-driven, context-specific nature of the undue hardship test, triable questions remain over whether the burden of granting Plaintiff an accommodation would have resulted in substantial increased costs to Defendants in relation to the conduct of their operations at the Newbern plant.  Defendants cite CDC guidance recommending vaccination as the best protection against the virus and the most serious effects of

infection like hospitalization and death.   Defendants saw a decrease in deaths and hospitalizations among employees after the implementation of the vaccine mandate.

But the undue burden test is not concerned with the wisdom of Defendants' vaccine mandate.  The question is whether Defendants could offer an accommodation to Plaintiff without substantially increasing Defendants' costs at the Newbern plant.   The inference from Defendants' evidence is that employee illnesses caused missed work, thereby impacting operations and presumably increasing Defendants' costs.  How much it actually increased costs Defendants have not said.  None of this proof shows how accommodating Plaintiff and any impact the accommodation had on Defendants' operations would have resulted in a substantial increase of costs to Defendants.  Defendants add that Plaintiff's presence would have put other vaccinated employees at risk.  Even accepting that claim as true, *Groff* made clear that adverse impact on other employees, standing alone, does not satisfy the undue burden test.  *Groff*, 143 S.Ct. at 2296  ("So an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business, but a court cannot stop its analysis without examining whether that further logical step is shown in a particular case.").   In the final analysis, the undue burden test is fact-bound and therefore ill-suited for determination as a matter of law at summary judgment.

Having determined that genuine disputes of material fact remain, Defendants' Motion for Summary Judgment on Plaintiff's Title VII religious accommodation claim is **DENIED**.

## III. Tennessee COVID Law - Tenn. Code Ann. § 14–2–102(a)

In what are essentially cross motions, both sides have moved for judgment as a matter of law on Plaintiff's claims under Tenn. Code Ann. § 14–2–102(a).  The Tennessee General Assembly enacted Title 14 of the Tennessee Code Annotated, effective November 12, 2021, to

create a number of protections related to COVID-19. Tenn. Code Ann. § 14–1–103 ("The purpose of this title is to safeguard the constitutional rights and liberty interests of persons during the COVID-19 pandemic.").  Plaintiff alleges her claim under Tenn. Code Ann. § 14–2–102(a), the Title 14 provision addressed to COVID-19 vaccination status. That section prohibits a "private business, governmental entity, school, or local education agency" from "compel[ling] or otherwise tak[ing] an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID-19 vaccine for any reason." § 14–2–102(a). Tenn. Code Ann. § 14–2–102(a) requires a person injured under the section to prove the following elements: (1) that a "private business" or other covered entity (2) compelled the person to provide "proof of vaccination" or, in the alternative, took an "adverse action" against the person to compel the person to provide "proof of vaccination" (3) over the person's objection to receiving a COVID-19 vaccine for any reason. *Hayslett v. Tyson Foods, Inc.*, 636 F.Supp.3d 900, 903–04 (W.D. Tenn. 2022) (citing *Sadler v. Tyson Foods, Inc.*, No. 1:22-cv-2203, 2022 WL 1721058, at *4 (W.D. Tenn. May 27, 2022)).  Title 14 grants a person injured as a result of such a violation a private right of action to seek "injunctive relief and to recover compensatory damages and reasonable attorneys' fees against an alleged violator." § 14–6–103.

The issue presented in the parties' cross Motions for Summary Judgment is whether Plaintiff can satisfy the second element, namely, that Defendants took an adverse action against her to compel her to provide proof of vaccination.  Plaintiff cites proof that Tyson's vaccine mandate required employees not just to be fully vaccinated but also to provide proof of vaccination.  *See* Defs.' Resp. to EEOC Complaint, Page ID 369, ex. B to Pl.'s Resp. in Opp'n (ECF No. 55-4).  Plaintiff's indefinite leave of absence without pay also meets the definition of an "adverse action."  Plaintiff argues that this evidence entitles her to judgment as a matter of

law on her Tennessee Title 14 claim.  Defendants respond that the announcement of the Tyson vaccine mandate and the interactive process in which Plaintiff requested an accommodation all occurred prior to the effective date of Title 14.  This means nothing Defendants did during that time frame could have violated the law.  Moreover, there is no actual evidence any Tyson employee ever asked Plaintiff for proof of vaccination.  Even if they did, Plaintiff's leave was not an adverse action.

The Court finds that genuine issues of material fact preclude both sides' requests for judgment as a matter of law on Plaintiff's Title 14 claim.  Tyson's written policy clearly required employees to do two things in order to keep their jobs: be fully vaccinated and provide proof of vaccination.[5]  A jury could find that Defendants' policy compelled Plaintiff to provide proof of vaccination, even though Plaintiff requested an exemption or accommodation from the mandate over her religious objection to the vaccine.  A jury could also find that though Defendants adopted the mandate prior to the effective date of Title 14, Tyson's policy remained in effect after the effective date of the Tennessee law.  Plaintiff can only prevail on her Title 14 claim if she can show that Defendants compelled her or took adverse action against her to compel her to provide proof of vaccination after November 12, 2021.  Viewing the evidence in a light most favorable to Plaintiff, a jury could find that Defendants did so when in May 2022 Plaintiff

---

[5] Concerning Defendants' argument that they never took adverse action against Plaintiff, a reasonable juror could easily find that unpaid leave, or even the mere threat of termination, was an "adverse action."  Title 14 defines "adverse action" as to "[d]ischarge, threaten, or otherwise discriminate against an employee in any manner that affects the employee's employment, including compensation, terms, conditions, locations, rights, immunities, promotions, or privileges."  Tenn. Code Ann. § 14-1-101(2).  Defendants' argument on this point is unpersuasive.

requested a return to work, which HR denied.  For these reasons, Defendants are not entitled to summary judgment on Plaintiff's claim under Tenn. Code Ann. § 14–2–102(a).

Turning the tables and viewing the record in a light most favorable to Defendants, a jury could conclude that Defendants mandated vaccination for their employees generally and at the same time provided an off-ramp for religious objectors like Plaintiff, and all before Title 14 ever went into effect.  The fact that Defendants established an interactive process which allowed Plaintiff to request an exemption or accommodation and Defendants never actually requested Plaintiff to provide proof of vaccination cut against the inference that Defendants compelled or took an adverse action to compel Plaintiff to provide proof vaccination, either before or after the effective date of the law.  Under the circumstances, the Court cannot grant Plaintiff judgment as a matter of law on her claim under Tenn. Code Ann. § 14–2–102(a).

Defendants make an additional argument in support of their Rule 56 Motion, that Title 14 authorized them as private companies to impose a vaccine mandate.  Tenn. Code Ann. § 14–2–101 prohibits a governmental entity or a school, though not a private company, from imposing a COVID-19 vaccine mandate.  § 14–2–101(1).  Defendants argue that under Tennessee law Tyson was authorized to impose a vaccine mandate and that its mandate could not have violated this separate provision of Title 14.  The Court finds this argument unpersuasive.  There is textual support and additional support in the legislative history for Defendant's position that Title 14 did not prohibit Tyson from adopting a vaccine mandate.  The problem is Plaintiff alleges that Defendants violated an entirely separate code section, § 14–2–102, not because of the mandate but by requiring Plaintiff to provide proof of vaccination as a condition of her employment.  The fact that Defendants' conduct did not breach one section of Title 14 has no bearing on whether Defendants may have breached another.

33

## <u>CONCLUSION</u>

The Court holds Defendants are entitled to judgment as a matter of law on Plaintiff's Title VII disparate treatment claim. However, genuine issues of material fact remain over whether Defendants' Leave of Absence Plus program constituted "discipline" over Plaintiff's refusal to get vaccinated or whether Defendants satisfied their legal duty to offer Plaintiff a reasonable accommodation over her religious beliefs. Triable issues also remain over whether Plaintiff's proposed accommodation would have created an undue hardship for Defendants. Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claims is therefore **GRANTED in part, and DENIED in part**. The Court further concludes that genuine issues of material fact remain over Plaintiff's claim under Tenn. Code Ann. § 14–2–102(a). Therefore, Plaintiff's Motion for Partial Summary Judgment on the claim is **DENIED**, and Defendants' Motion for Summary Judgment on the claim is **DENIED**.

      **IT IS SO ORDERED**.

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

                                        Date:  September 20, 2023.